Lonnie SCHOOLEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

July 8, 1977.

Discretionary Review Denied Nov. 14, 1977.

Jack Emory Farley, Public Defender, Larry H. Marshall, Assistant Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Robert L. Chenoweth, Asst. Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and GANT and PARK, JJ.

PARK, Judge.

The appellant, Lonnie Schooley, appeals from an order of the Jackson Circuit Court overruling his motion under RCr 11.42 seeking to vacate and set aside an earlier judgment of the Jackson Circuit Court sentencing him to two consecutive five year terms for storehouse breaking. Schooley was a juvenile at the time the offenses were committed. In his motion under RCr 11.42, Schooley asserted that the circuit court never acquired jurisdiction over the charges against him because there was no valid transfer of the case by the Jackson County Juvenile Court.

Schooley was originally charged with seven counts of breaking and entering at a time when he was sixteen years of age. Following a hearing on October 8, 1968, the juvenile court entered an order transferring Schooley's case to the circuit court. On October 15, 1968, the grand jury returned two indictments against Schooley for storehouse breaking. Schooley entered a plea of guilty to both charges, and he was sentenced by the circuit court on October 21, 1968, to two consecutive five year sentences.

There was no direct appeal of the judgment of conviction, but the record reflects that Schooley filed an earlier motion under RCr 11.42 in the circuit court on February 14, 1972. The circuit court overruled this motion to vacate the judgment of conviction. Schooley apparently attempted to prosecute an appeal from the denial of his first motion under RCr 11.42, but the record does not establish an appellate decision on the merits. This first motion under RCr 11.42 was filed by Schooley *pro se.*

The motion now under consideration was filed with the circuit court on July 23, 1974, by the public defender's office on Schooley's behalf. The disposition of this motion was delayed when Schooley escaped from the Jackson County jail while awaiting the hearing on his motion. Following his return to custody, the circuit court conducted hearings on the motion on February 12 and February 20, 1976. The circuit court denied the motion to vacate judgment, holding that there was a valid transfer of jurisdiction from the juvenile court to the circuit court in 1968.

The provisions of KRS 208.170(1) govern the transfer of felony charges against a juvenile from juvenile court to circuit court. In construing KRS 208.-170(1), this state's highest court held in *Hubbs v. Commonwealth,* Ky., 511 S.W.2d 664, 666 (1974):

> " * * * *either* the waiver order, and accompanying statement, or the juvenile court record must include (1) a showing that the juvenile had a hearing at which he was represented by counsel and (2) a statement of the reasons for the transfer which are specific enough to permit meaningful review for the purpose of determining whether there has been compliance with KRS 208.170(1)."

See also, *Kent v. United States,* 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Bingham v. Commonwealth,* Ky., 550 S.W.2d 535 (1977); *Risner v. Commonwealth,* Ky., 508 S.W.2d 775 (1974); *Whitaker v. Commonwealth,* Ky., 479 S.W.2d 592 (1972). A transfer order does not meet the foregoing test if the statement of rea-

sons for the transfer does no more than parrot the language of KRS 208.170(1). The transfer order is not sufficient if it merely states that "the best interest of the child and of the public" require that the juvenile be tried as an adult in circuit court. *Bingham v. Commonwealth, supra; Hamilton v. Commonwealth,* Ky., 534 S.W.2d 802 (1976).

■ If the juvenile court fails to make adequate findings, the transfer order is deemed invalid. In *Richardson v. Commonwealth,* Ky., 550 S.W.2d 538 (1977) the Supreme Court held that an order transferring jurisdiction from the Christian County Juvenile Court was invalid. The Supreme Court then stated that the circuit court did not acquire "jurisdiction" of either the "person or the subject matter" of the case. Not having jurisdiction, the indictment and subsequent judgment in the circuit court were "void." Juvenile offenders convicted in circuit court have successfully challenged their convictions on the grounds of the inadequacy of the transfer order in a number of different circumstances. In the *Richardson* and *Hubbs* cases, the challenge was by direct appeal from a judgment based upon a jury verdict. In the *Bingham* case, the challenge was by direct appeal from a judgment entered upon a guilty plea. In the *Hamilton* case, the challenge was successfully raised in a subsequent prosecution for being an habitual criminal. Strange as it may seem, there never has been a successful challenge by a motion under RCr 11.42.

■ In determining whether the Jackson Circuit Court had jurisdiction to enter judgment on Schooley, consideration must be given to the meaning of the term "jurisdiction." In *Duncan v. O'Nan,* Ky., 451 S.W.2d 626 (1970), the argument was made that a circuit court had no jurisdiction in a will contest case because there was no valid judgment of the county court by which the circuit court could gain jurisdiction on appeal. In holding that the circuit court judgment was not invalid for want of jurisdiction, the court stated:

"As we pointed out in *Commonwealth Dept. of Highways v. Berryman,* Ky., 363 S.W.2d 525: 'The word "jurisdiction" is more easily used than understood.' That case recognized the general elementary principle that subject-matter jurisdiction cannot be waived. A party will not be estopped to show lack of subject-matter jurisdiction at any time. The parties may not confer subject-matter jurisdiction by agreement. The problem, however, is in delineating the concept 'jurisdiction of the subject matter.' Chief Judge Desmond of the Court of Appeals of New York undertook to do so in *In Re Estate of Rougeron,* 17 N.Y.2d 264, 271, 270 N.Y. S.2d 578, 583, 217 N.E.2d 639, 643, in this language:

'In other words the rule that subject-matter jurisdiction cannot be born of waiver, consent or estoppel has to do with those cases only where the court has not been given any power to do anything at all in such a case, as where a tribunal vested with civil competence attempts to convict a citizen of a crime. In other words, "subject matter" does not mean "this case" but "this kind of case" * * *.'

\* \* \* \* \* \*

"The circuit court had general jurisdiction of the subject matter. It had the power to try this kind of case. A jurisdictional element of this particular case was a judgment complying with formal requisites properly entered in county court. * * *.

"Once it is understood that the circuit court had subject-matter jurisdiction in the pervasive sense and that the mechanics of perfecting invocation of that jurisdiction were jurisdictional elements, then the emphasis shifts from a power concept to a policy concept." 451 S.W.2d at 631–32.

Whether a circuit court has "jurisdiction" of a juvenile felony offender is governed by the foregoing principles.

■ Circuit courts have general jurisdiction to try felony cases, including charges of storehouse breaking. Circuit courts also have general jurisdiction to try juvenile felony offenders if there has been

a valid transfer order pursuant to KRS 208.170(1). Therefore, the Jackson Circuit Court had general subject-matter jurisdiction. The question to be determined is whether the Jackson Circuit Court had jurisdiction of Schooley's particular case. Applying the principles adopted in *Duncan v. O'Nan, supra,* the question is one of policy rather than power. The policy consideration is one of due process. In *Anderson v. Commonwealth,* Ky., 465 S.W.2d 70 (1971), the claim was made that the juvenile court acquired no jurisdiction because of its failure to notify the juvenile's parent, guardian or custodian as required by KRS 208.080 and 208.090. As the juvenile court allegedly lacked jurisdiction, it was then argued that it was impossible for the juvenile court to transfer the case to circuit court. In rejecting the jurisdictional argument, the court stated:

"No sound reason appears for holding that the juvenile court lacks jurisdiction respecting a child charged with crime for failure to notify the child's parent, guardian, or custodian. It might well be that a proceeding, totally without notice, would be invalid, but its invalidity would stem from its failure to afford due process and fair treatment, not from any fundamental infirmity in the court's jurisdiction. To the extent that the prior decisions of this court (whether specifically cited herein or not) have been premised on a question of jurisdiction, they are regarded as unsound and nonauthoritative.

"In this framework the failure of appellant, through counsel, to challenge, at least in circuit court, the due-process adequacy of the juvenile court proceedings could well be regarded as failure to preserve the question for appellate review. However, in light of the language of earlier opinions, such a ruling would itself be at least unfair. But, viewed as a due-process question rather than a jurisdictional one, nothing appears which suggests lack of due-process or fair treatment. Appellant had able counsel who was far better able to protect his rights than a parent, guardian or custodian. Not a word is hinted to indicate that

more could have been done for appellant in juvenile court than was done there. In light of this, the court holds that appellant's transfer from the jurisdiction of the juvenile court to the jurisdiction of the circuit court was duly accomplished." 465 S.W.2d at 74–75.

In *Fields v. Commonwealth,* Ky., 498 S.W.2d 130 (1973), the court specifically stated that due process was the basis for holding that a juvenile court order must set forth the reasons for transfer of the same case to circuit court.

■ Schooley contends that the transfer order entered by the juvenile court on October 8, 1968, was invalid because it failed to state the reasons for the transfer with sufficient particularity. Due process requires that the reasons for transfer be stated with particularity in order to permit meaningful review of the transfer order by the circuit court or by an appellate court. Unless appellate review is sought it cannot be said that the transfer order was a nullity and that the circuit court was without jurisdiction. In *Holt v. Commonwealth,* Ky., 525 S.W.2d 660 (1975), the juvenile defendant raised the validity of the transfer order during the proceedings in circuit court. However, there was no direct appeal from the judgment of conviction entered by the circuit court. Subsequently, the validity of the transfer order was challenged by a motion under RCr 11.42 on the grounds that the juvenile court's failure to state the reasons for transfer constituted a denial of due process. The appellate court affirmed the trial court's denial of the motion under RCr 11.42. As the issue had been raised in the original circuit court proceedings, the motion under RCr 11.42 was barred by the failure to take a direct appeal from the judgment of conviction. In *Crick v. Commonwealth,* Ky., 550 S.W.2d 534 (1977), the Supreme Court held that the failure to raise the issue of the sufficiency of the juvenile court transfer order in the first RCr 11.42 motion barred the defendant from raising the issue in a second RCr 11.42 motion. If a transfer order is invalid on its face and a subsequent circuit court judgment is "void"

because of a lack of "jurisdiction," it would seem that the issue could not be waived, but could be raised at any time. On the other hand, if the issue is considered as a question of due process there can be a waiver under certain circumstances by failure to appeal. Cf. *Smith v. Commonwealth*, Ky., 412 S.W.2d 256 (1967).

 The order of the juvenile court transferring Schooley's case to circuit court contained the following findings: (1) that Schooley was a juvenile under the age of eighteen but over the age of sixteen years; (2) that a hearing was held on October 4, 1968; (3) that Schooley was present at the hearing and represented by his attorney, Paul E. Hieronymus; (4) that a report of the Kentucky Department of Child Welfare had been filed containing its findings and recommendations concerning Schooley; (5) that there were "reasonable grounds to believe" that Schooley was guilty of six counts of breaking and entering, Schooley "having admitted or entered a plea of guilty * * * at least to 6 of the 7 counts;" and (6) that "public justice and the best interests" of Schooley required that the case be transferred to circuit court. The last finding is not a statement of the specific reasons for the transfer as required by the test laid down in the *Hubbs* case. However, this finding must not be taken out of context, and it should be considered in light of the language of the entire order.

The transfer order specifically refers to the report filed by the Department of Child Welfare. Unlike the record involved in the *Bingham* case, the report from the Department of Child Welfare supports the decision of the juvenile judge to transfer the case to circuit court. The report from the Child Welfare worker stated: (1) that Schooley was first committed to the Department of Child Welfare at age eleven on a charge of breaking and entering; (2) that subsequently he had been "in and out of Kentucky Village many times;" (3) that he was returned to Kentucky Village on a charge of auto theft in January 1968; (4) that, according to his juvenile counselor in Lexington, Schooley had not attended school regularly after being placed with his mother in June 1968; and (5) that it would be a waste of time to return Schooley to Kentucky Village and therefore it was recommended that Schooley be "certified" to circuit court. There is nothing in the record to indicate that the decision of the juvenile judge to transfer Schooley's case to circuit court was arbitrary or capricious.

 There was no explicit statement anywhere in the record by the juvenile judge that his transfer order was based upon the contents of the Child Welfare worker's report. However, common sense strongly suggests that the juvenile judge's decision was based upon Schooley's admission of guilt to six charges and the Child Welfare worker's report which was referred to in the transfer order. When the validity of a transfer order is raised on a direct appeal, it would be reasonable to require that the reasons for transfer be stated explicitly and that it not be necessary to infer the specific reasons for transfer from the record. However, this case arises on a motion under RCr 11.42, and different considerations are applicable. There are errors which would require reversal on direct appeal but which do not justify vacating a judgment of conviction by a motion under RCr 11.42. That rule is confined to prisoners in custody under a sentence "subject to collateral attack." The error must be of such magnitude as to render the judgment of conviction so fundamentally unfair that the defendant can be said to have been denied due process of law. The interest of the public in the finality of criminal judgments of long standing weighs heavily in the determination when the error is relatively minor. When the trial court has general subject matter jurisdiction, an erroneous finding of the existence of a jurisdictional fact necessary to the court's jurisdiction in the particular case does not necessarily render the judgment subject to collateral attack. *Sharp v. Waddill*, Ky., 371 S.W.2d 14 (1963).

More than eight years have elapsed since Schooley entered his pleas of guilty in the circuit court and was sentenced. Schooley

is now twenty-five years of age and the juvenile court has consequently lost any power of disposition over Schooley. KRS 208.200; *Smith v. Commonwealth, supra* at 260. When the issue of the validity of a transfer order is raised on direct appeal, there is a practical possibility that the juvenile defendant can still receive the benefit of an adjudication in juvenile court. No such possibility exists in this case.

▇ There is no issue with respect to Schooley's guilt. He admitted his guilt both in the juvenile court and the circuit court, where he pled guilty. While the entry of a guilty plea in circuit court would not cure a substantial denial of due process in the proceedings in juvenile court leading to transfer, the entry of a guilty plea has been a significant factor in the decision of other courts holding that there was no denial of due process to a juvenile defendant who seeks to make a collateral attack upon a judgment based upon a guilty plea following transfer from juvenile court. *Harris v. Procunier,* 498 F.2d 576 (9th Cir. 1974); *Smith v. Yeager,* 459 F.2d 124 (3rd Cir. 1972); and *Acuna v. Baker,* 418 F.2d 639 (10th Cir. 1969).

▇ Furthermore, Schooley has previously filed a motion under RCr 11.42. Whether the earlier motion challenged the transfer order does not appear of record. However, it is clear that Schooley failed to prosecute an appeal from the circuit court's order overruling the earlier motion under RCr 11.42. As Schooley has had ample opportunity to challenge the validity of the transfer order by direct appeal or by the earlier motion under RCr 11.42, his challenge to the validity of the transfer order in the present motion under RCr 11.42 is not timely. *Crick v. Commonwealth, supra; Holt v. Commonwealth, supra.*

For the foregoing reasons, this court concludes that there was no denial of due process justifying setting aside his judgment of conviction. The order and judgment of the circuit court overruling his motion under RCr 11.42 is affirmed.

All concur.