James JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–SC–000115–DG.

Supreme Court of Kentucky.

March 22, 2012.

La Mer Kyle–Griffiths, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

The Appellant James Jackson was charged with felony drug trafficking and several misdemeanors, including possession of a handgun by a minor, in the juvenile session of the McCracken District Court. The district court certified him as a youthful offender and transferred him to the circuit court, where he entered a guilty plea and was sentenced as an adult. He now seeks to collaterally attack his conviction on the grounds that the transfer was improper and, as a result, the circuit court never acquired jurisdiction over him or his case. Because the district court's transfer order was legally sufficient on its face, and no other jurisdictional defects appear in the record, this Court concludes that the transfer was proper, and the circuit court had jurisdiction.

## I. Background

In 2004, a little more than a month before his sixteenth birthday, the Appellant was taken into custody after police and his juvenile case worker found him in possession of cocaine, marijuana, and a handgun. The officer filed a juvenile petition alleging that Appellant was a public offender and charging Appellant with first-degree trafficking in a controlled substance, specifically cocaine, which at the time was a Class C felony; and possession of marijuana, possession of drug paraphernalia, and possession of a handgun by a minor, all of which are misdemeanors. Despite the handgun charge, the trafficking offense was not specifically listed as firearm enhanced on the juvenile petition.[1]

At a juvenile detention hearing that followed, the arresting officer described the events surrounding the arrest. As part of that testimony, he stated that the juvenile case worker, who was supervising Appellant's probation on an earlier adjudication, searched Appellant and found a loaded gun in his pants.

Upon hearing this, the district judge interrupted the examination of the witness to ask "Should these charges be firearm enhanced?" The following discussion then took place between the judge and the Assistant County Attorney:

Judge: Should these charges be firearm enhanced? Should these charges be firearm enhanced?

Attorney: Uh, yes your honor. I think so, and we—

Judge: And I, and I assume then we are talking about a transfer hearing?

Attorney: And we will be making a motion your honor, just for the record, to certify him as an adult.

Judge: Well. Yeah, that is what I was just saying.

No transfer motion, oral or written, was actually made at that time. Nevertheless, the judge scheduled a transfer hearing to be held about a month later. At that time, she made the following notation on the docket sheet:

CA motions to certify as adult

All charges are firearm enhanced

Despite this notation, no transfer motion was subsequently filed and the charges were never amended to specifically list them as firearm enhanced. Only the district court's docket sheets list the charges as "firearm enhanced."

At the transfer hearing, held before a different judge, the court heard from the arresting officer and the juvenile case worker. After hearing the proof and giving the attorneys a chance to speak, the judge made the following oral findings:

Okay. I'm going to look at 640.010 again. I do find probable cause to believe that the felony offenses as charged were committed and that Mr. Jackson committed those. In examining the factors under .010(2)(b), I find that it is a very serious offense, especially trafficking with a handgun. Against persons: these are crimes against persons, distributing narcotics into neighborhoods. The maturity of

---

1. At the time of the arrest, KRS 218A.1412 made a first offense of first-degree trafficking a Class C felony. That provision has since been amended. KRS 218A.992 stated (and still states) that if a person is convicted of a violation of a provision of KRS Chapter 218A and was in possession of a firearm in furtherance of the offense, then the person shall "be penalized one (1) more class severely than provided in the penalty provision pertaining to that offense if it is a felony." KRS 218A.992(1)(a). In other words, the offense is punished as though it were a Class B felony when the firearm enhancement statute is implicated.

the child as determined by his environment: I do not find that he is immature. He has a—well, I'll take up the prior record in a minute. Best interest of the child and the community: Mr. Jackson needs to be removed from this community for an extens—and any community—for an extensive period of time if these charges are true. And the prospect of adequate protection of the public: I do not believe there will be adequate protection to the public by remaining in the juvenile system. And the likelihood of reasonable rehabilitation: I really haven't heard any evidence on.

That's certainly more than two factors. And discussing his record, beginning April of '03, leaving the scene of an accident, intimidating a witness. August '03, assault fourth degree, which was, I'm sorry, that was dismissed. Two contempts in September of '03. CD time, beyond control. January of '04, seven days detention. Starts picking up drug charges in March of '04; possession of controlled substance first degree, possession of drug paraphernalia, CD time revoked. Assault fourth degree, was guilty of March '04. April '04, an assault third degree times two. And then he was actually operating a vehicle in August of '04. That would tend to show some level of maturity. And then he has these current charges. I'm going to order that Mr. Jackson be bound up to the grand jury, so they can take a look and see whether or not the grand jury thinks it merits keeping it up there.

At the conclusion of the hearing, the judge made the following notation on his docket sheet, which was signed:

Found probable cause

Certified as youthful offender

Bound to Grand Jury

The grand jury indicted Appellant on first-degree trafficking in a controlled substance with a firearm enhancement and the same three misdemeanors he had been charged with in the district court. The indictment described the trafficking charge as a Class B felony, presumably based on the firearm enhancement statute, KRS 218A.992. In the circuit court, Appellant entered into a plea bargain in which the Commonwealth recommended a ten-year sentence (the minimum for a class B felony) in exchange for Appellant's plea of guilty to all four charges. The circuit court accepted Appellant's guilty plea and sentenced him in accordance with the plea agreement.

Appellant was scheduled for "adult re-sentencing" under KRS 640.030(2) to take place soon after he turned eighteen (in 2006). Shortly before the hearing, Appellant's counsel moved under RCr 11.42 and CR 60.02 to vacate his conviction on the ground that he was improperly certified as a youthful offender and transferred from the district court to circuit court, which, he claimed, lacked jurisdiction. The circuit court denied the motion to vacate and ordered that Appellant serve the remainder of his sentence in the custody of the Department of Corrections.

On appeal, the Court of Appeals held that the circuit court properly had jurisdiction over Appellant's case, noting that the circuit court had general subject-matter jurisdiction over youthful offender cases and that the only real question was whether the court had jurisdiction over this particular case based on the district court's findings at the transfer hearing. The court concluded that issue was really a question of due process, based on one of its own prior decisions, since the case was at the collateral attack stage, and required "an error of such magnitude to render the judgment of conviction so fundamentally

unfair that the defendant can be said to have been denied due process of law." *Schooley v. Commonwealth*, 556 S.W.2d 912, 917 (Ky.App.1977). The court held that any complaints about the district court's findings should have been raised on direct appeal, that the guilty plea waived "evidentiary defenses and subsequent claims of error," and that any evidentiary issues could only be raised in the context of a claim of ineffective assistance of counsel. Because a guilty plea limits even the types of issues that can be alleged as ineffective assistances of counsel to those going to the voluntariness of the plea, *see Quarles v. Commonwealth*, 456 S.W.2d 693, 694 (Ky.1970), the court could not get into the substance of the combined due process and ineffective assistance claim. Nonetheless, the court concluded that the voluntariness of Appellant's guilty plea was still in question and that the circuit court had erred in failing to address it. As a result, the court remanded the case to the circuit court to determine whether the guilty plea itself had been voluntary.

Despite a partial victory at the Court of Appeals, Appellant sought discretionary review by this Court of the issue of the circuit court's jurisdiction over his case, which was granted. The Commonwealth has not sought discretionary review of the Court of Appeals' decision to remand for a determination of voluntariness of the guilty plea.

## II. Analysis

Appellant argues that his conviction must be vacated because his transfer to circuit court violated his due process rights. Specifically, he claims that the district court never made the findings required under KRS 635.020 and KRS 640.010(2)(a), and that no such finding *could* have been made in light of the record or the law. In essence, he asserts that

the circuit court did not have jurisdiction. He also claims that his trial counsel was ineffective by failing to object to the transfer both at the district and circuit courts. The Commonwealth responds by claiming that Appellant's unconditional guilty plea waived all his claims.

■ The Commonwealth is correct that the general rule in this state is that an unconditional guilty plea waives all defenses except that the indictment does not charge a public offense. *See, e.g., Thompson v. Commonwealth*, 147 S.W.3d 22, 39 (Ky.2004) ("[T]he entry of a valid guilty plea effectively waives all defenses other than that the indictment charged no offense."). This waiver covers most claims of ineffective assistance of counsel, including those Appellant has raised in his brief. *See, e.g., Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ("We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." (referring to *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970))). Instead, after a guilty plea, a defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)); *see also*

*Quarles,* 456 S.W.2d at 694. While this may require some analysis of whether trial counsel was ineffective, it is nevertheless a somewhat different and narrower inquiry, since it ultimately focuses on the voluntariness of the guilty plea and not general prejudice or the performance of counsel. *Cf. Bronk v. Commonwealth,* 58 S.W.3d 482, 486 (Ky.2001) (measuring voluntariness by looking at the effectiveness of counsel).

In fact, it was this law on which the Court of Appeals relied in remanding the case to the trial court to determine the voluntariness of Appellant's guilty plea. It is worth noting again that the Commonwealth did not seek review of that decision, despite its suggestion in response to Appellant's present ineffective-assistance-of-counsel claim that there is ample evidence to suggest that the guilty plea was, in fact, voluntary, while also conceding that the Court of Appeals' remedy was appropriate. Regardless, the issue of voluntariness is not before this Court, and the waivers stemming from Appellant's guilty plea bar this Court from reaching the other claims of ineffective assistance of counsel that he raises until such time as his guilty plea could be found to be involuntary.

■ Still, the Commonwealth's suggested approach to the waiver's effect is an oversimplification. It hinges on an incomplete statement of the rule that was crafted to address the most common scenario, not to outline the whole black-letter law on the subject. While there is no question that "a guilty plea reduces the scope of potentially appealable issues," *Windsor v. Commonwealth,* 250 S.W.3d 306, 307 (Ky. 2008) (quoting *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)), it does not narrow the field to the single issue claimed by the Commonwealth. As the U.S. Supreme Court has noted, "A guilty plea ... simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York,* 423 U.S. 61, 62–63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam). The situation is markedly different when "the claim is that the State may not convict petitioner no matter how validly his factual guilt is established," where, for example, the charge would violate double jeopardy. *Id.* "[A] plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute." *Id.*

■ Though the Supreme Court was speaking specifically of alleged constitutional errors, the same reasoning extends to other errors that are not implicated by the establishment of a defendant's guilt. Thus, in addition to failure of the indictment to charge a public offense, issues that survive a guilty plea include competency to plead guilty, certain types of sentencing issues, and whether the trial court had general subject-matter jurisdiction. *Windsor,* 250 S.W.3d at 307. In fact, this Court's Rules of Criminal Procedure, which the Commonwealth fails to cite, specifically state: "Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court *at any time* during the proceedings." RCr 8.18 (emphasis added).

■ Despite his characterization of it as a due-process claim, the Appellant's fundamental claim is that the district court's transfer order was invalid and thus the circuit court never acquired jurisdiction over his case. If he is correct, then his guilty plea did not waive the issue, as noted above. This conclusion is further supported by the rule that subject-matter jurisdiction cannot be born of agreement,

waiver, or estoppel. *Duncan v. O'Nan,* 451 S.W.2d 626, 631 (Ky.1970). This is because jurisdiction goes to the very "power of the court to decide an issue in controversy." *Nordike v. Nordike,* 231 S.W.3d 733, 737 (Ky.2007). Unfortunately, the questions whether Appellant has raised a true subject-matter-jurisdiction claim and, assuming he has, whether the circuit court had subject-matter jurisdiction are complicated.

Ordinarily, the circuit court has no subject matter jurisdiction over juvenile cases. The circuit court has "general jurisdiction," which means "original jurisdiction of all justiciable causes not exclusively vested in some other court." KRS 23A.010. But the district court, which is admittedly "a court of limited jurisdiction," has been given "original jurisdiction in all matters specified in KRS 24A.110 to 24A.130." KRS 24A.010. And KRS 24A.130 states: "The juvenile jurisdiction of District Court *shall be exclusive* in all cases relating to minors in which jurisdiction is not vested by law in some other court." KRS 24A.130 (emphasis added); *see also* KRS 610.010(1) ("Unless otherwise exempted by KRS Chapters 600 to 645, the juvenile session of the District Court of each county shall have exclusive jurisdiction in proceedings concerning any child living or found within the county who has not reached his or her eighteenth birthday or of any person who at the time of committing a public offense was under the age of eighteen (18) years, who allegedly has committed a public offense prior to his or her eighteenth birthday, except a motor vehicle offense involving a child sixteen (16) years of age or older.").

Thus, the district court has original, mostly exclusive jurisdiction over juvenile matters. The circuit court cannot hear juvenile matters unless given that authority by another statute. Juveniles who violate the law are deemed to be status or public offenders, depending on the offense or violation charged. KRS 610.010(1)–(4). They are not punished as criminals, though they may be placed in custody at times. Instead, the primary aim when dealing with juveniles is to "promote the best interests of the child through providing treatment and sanctions to reduce recidivism and assist in making the child a productive citizen by advancing the principles of personal responsibility, accountability, and reformation, while maintaining public safety, and seeking restitution and reparation." KRS 600.010(2)(e).

▪ Under some circumstances, however, a juvenile can be deemed a youthful offender. *See* KRS 635.020; 640.010. Youthful offenders are transferred to the circuit court, KRS 640.010(2), where they may be tried like adults, KRS 610.015, and "shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult convicted of a felony offense" with some exceptions, KRS 640.030. A circuit court has subject-matter jurisdiction only over youthful offender cases, not public or status offender cases. Thus, a circuit court acquires jurisdiction over a case in which a juvenile is accused of violating the penal law only if the juvenile is alleged to be a youthful offender and the district court transfers the child to circuit court.

Before a juvenile can be deemed a youthful offender and transferred to the circuit court, however, the district court must first hold a preliminary hearing and decide whether the child falls into any of the categories laid out in KRS 635.020 and whether probable cause to believe certain facts exists. *See* KRS 640.010(2). Even after making these findings, in most cases the court must still consider a list of factors, such as the seriousness of the offense,

to determine whether transfer is appropriate.[2] *See* KRS 640.010(2)(b)–(d). Only after the district court satisfies these procedural hurdles does the circuit court acquire jurisdiction over the juvenile's case. (And even then, "[i]f . . . the grand jury does not find that there is probable cause to indict the child as a youthful offender . . . the child shall not be tried as a youthful offender in Circuit Court but shall be returned to District Court to be dealt with as provided in KRS Chapter 635." KRS 640.010(3).)

This Court, however, has held that a defendant's failure to challenge the factual prerequisites to the circuit court's jurisdiction in a youthful offender case at the district and circuit courts is ordinarily a waiver. *See Commonwealth v. Davis,* 80 S.W.3d 759, 760–61 (Ky.2002); *Commonwealth v. Thompson,* 697 S.W.2d 143, 144 (Ky.1985). As a result, except in certain circumstances, these "issue[s] cannot be raised on appellate review." *Davis,* 80 S.W.3d at 760; *see also Thompson,* 697 S.W.2d at 144 ("The utter failure to preserve any inadequacies of the juvenile procedure, if any in fact existed, is fatal to raising the question on appellate review."). Rather than being jurisdictional matters, questions about the adequacy of the transfer proceedings were held to be due process questions, which are largely waived if raised for the first time on appeal. *Thompson,* 697 S.W.2d at 144; *Davis,* 80 S.W.3d at 760. (Logically, that waiver extends to raising the issues for the first time in a collateral proceeding.) The Court hinted that the only claims about the adequacy of the proceedings to survive such a waiver were those going to whether the transfer order was facially valid. *Thompson,* 697 S.W.2d at 145 (deciding whether the transfer order was invalid); *Davis,* 80 S.W.3d at 760–61 ("While *Thompson* indicates that a facially invalid transfer order may be challenged for the first time on appeal, no such argument is made here." (citations omitted)).

■ Though they do not expressly state it, these cases maintain a subtle distinction between a court's true subject-matter jurisdiction and procedural irregularities or outright failings that only indirectly go to jurisdiction. This distinction is clearer in other areas of the law. *See, e.g., Nordike,* 231 S.W.3d at 738. In those other areas, the Court has distinguished between general subject-matter jurisdiction and jurisdiction over a particular case. Subject matter jurisdiction is "the court's power to hear and rule on a particular *type* of controversy." *Id.* at 737. Wherever the line between these two types of jurisdiction falls in juvenile cases, what is clear in *Davis* and *Thompson* is that the waiver rule does not apply when the transfer order is facially insufficient.

■ As stated in *Davis,* "*Thompson* indicates that a facially invalid transfer order may be challenged for the first time on appeal." *Davis,* 80 S.W.3d at 760–61; *see also Schooley,* 556 S.W.2d at 915–16 ("Circuit courts also have general jurisdiction to try juvenile felony offenders if there has been a valid transfer . . . ."), *quoted with approval in Davis,* 80 S.W.3d at 761. *Davis* declined to address the merits of the issue because "no such argument" was raised in that case. 80 S.W.3d at 761. *Thompson* addressed the issue directly, holding that the transfer order in that case was not facially invalid. In *Thompson,* this Court reversed the Court of Appeals, which had held that "the order merely

2. The only exception to these additional findings is an offense in which a firearm is used. If the court finds that a firearm was used in the offense, the additional findings are bypassed and the case must be transferred. *See* KRS 635.020(4).

'parrot[ed]'" the transfer statute. 697 S.W.2d at 144. Instead, the order did "much more," including "address[ing] each of the criteria set out in the statute and stat[ing] by what witnesses the elements were proved." *Id.*

■ The question in this case, then, is whether the district court's order in this case was facially deficient. In making this inquiry, we consider both the judge's order, which was handwritten on the docket sheet, and his oral findings made on the record. *Cf. Harden v. Commonwealth*, 885 S.W.2d 323, 324 (Ky.App.1994) (considering both oral and written findings); KRS 640.010(2)(c) (requiring court to "state on the record the reasons for the transfer").

Under the present statutory scheme,[3] the district court must make a series of mandatory findings and then consider a series of factors to decide whether transfer is appropriate. KRS 640.010(2)(a) lays out the mandatory findings:

> At the preliminary hearing, the court shall determine if there is probable cause to believe that an offense was committed, that the child committed the offense, and that the child is of sufficient age and has the requisite number of prior adjudications, if any, necessary to fall within the purview of KRS 635.020.

In essence, this provision requires that the court find whether the juvenile satisfies any of the criteria for transfer laid out in KRS 635.020. And KRS 635.020 allows transfer proceedings against offenders who fall into several categories that reflect combination of three different factors: type of offense, age of the offender, and

prior offenses. For example, if the child is sixteen or older, has been charged with a class C or D felony, and has previously been adjudicated a public offender, transfer proceedings can be initiated. KRS 635.020(3).[4] KRS 640.010(2)(a) requires a finding of probable cause of each factor listed under one of the criteria in KRS 635.020. The court must then consider a series of eight factors and find that at least two of them favor transfer before a juvenile "may" be transferred to circuit court. KRS 640.020(2)(b) & (c). The court *must* make the statutorily required findings before it can turn to the discretionary considerations in subpart (b).

The Appellant argues that the district judge opined only on the discretionary considerations listed in KRS 640.010(2)(b), but this characterization shortchanges what the judge did. The very first thing the judge found was "probable cause ... that the felony offenses as charged were committed and that Mr. Jackson committed those." This tracks, in part, the language in KRS 640.020(2)(a) about mandatory findings. The judge then turned explicitly to the factors listed in subpart (b) of the statute, discussing the proof as to each factor in turn. Thus, it is apparent that the court actually made two sets of findings, one concerning mandatory findings, and one about the discretionary factors under subpart (b). The Appellant's contention that the judge simply ignored the mandatory findings is incorrect.

The next question, then, is whether the district judge's findings were sufficient on their face to justify transfer. This Court

3. *Thompson* was decided before the adoption of the Unified Juvenile Code, so its statutory references are out of date.

4. One of the criteria—that the child is charged with a felony in which a firearm was used, and the child was at least fourteen at the time—bypasses the procedures in KRS

640.010, which includes the discretionary considerations and thus gives the district court some discretion whether to transfer. *See* KRS 635.020(4). Instead, if the court finds probable cause, then the juvenile "*shall* be transferred." *Id.* (emphasis added).

concludes that they were, and that the circuit court therefore properly obtained jurisdiction.

As Appellant notes, it is not entirely clear under which KRS 635.020 criterion the court was proceeding. The court never explicitly identified a criterion, which by itself makes appellate review difficult. But the issue was first framed as whether the trafficking charge was "firearm enhanced," which narrows the possibilities to only two of the criteria: the one about use of a firearm, KRS 635.020(4), and the one about class A and B felonies, KRS 635.020(2).[5]

That the court was proceeding under the firearm provision in subsection (4) is unlikely, since that provision bypasses KRS 640.010 and mandates transfer upon the mandatory finding. That the judge's first set of findings track KRS 640.010(2)(a) and that he made findings under the discretionary factors in KRS 640.010(2)(b) suggest that he was proceeding under the KRS 635.020(2) criterion instead. Regardless, this Court need not resolve whether the district court properly transferred Appellant under subsection (4) because the transfer was proper under subsection (2).

To transfer under KRS 635.020(2), the court must find by probable cause that the juvenile committed "a capital offense, Class A felony, or Class B felony" and "had attained age fourteen (14) at the time of the alleged commission of the offense." But transfer proceedings may only begin "[i]f a child [is] *charged with* a capital offense, Class A felony, or Class B felony, [and] had attained age fourteen (14) at the time of the alleged commission of the offense." *Id.* (emphasis added). The Appellant objects to application of this criterion because he claims he was not charged with a Class B or higher felony.[6] Specifically, he claims that the firearm enhancement for trafficking under KRS 218A.992 is only a sentencing enhancement, since it only comes into play upon conviction, and is not a chargeable offense, which means that he was only charged with a Class C felony.[7]

---

5. The court could not have been proceeding under the other criteria because even the allegations, construed in a light most favorable to the Commonwealth, could not possibly have satisfied them. For example, KRS 635.020(3) requires the child to be at least sixteen years old, but there is no allegation that Appellant was that age. In fact, the record clearly establishes that he was only fifteen.

6. Though the district court also made no explicit finding as to Appellant's age, there is no question that he was within the age range established by KRS 635.020(2). As Appellant's own brief admits, "he was only fifteen ... at the time the ... felony charge was alleged to have occurred and was still fifteen ... when brought before the district court on the charge." He also states, "Moreover, his age at the time of the alleged offense was a fact of record, which was never challenged by the Commonwealth." Presumably, he did not challenge the fact of his age either.

7. In his statement of the case, Appellant also notes repeatedly that the county attorney never actually moved to transfer Appellant to the circuit court. The transfer proceeding only happened upon the district judge's suggestion. Yet KRS 640.010(2) requires a "motion by the county attorney to proceed under this chapter, ... after the county attorney has consulted with the Commonwealth's attorney" to set the transfer proceedings in motion. While these facts do not undermine the validity of the transfer, as a motion by the Commonwealth is not a jurisdictional prerequisite and is only a procedural requirement, they are troubling in that they present a potential separation of powers issue, were the Commonwealth to oppose transfer. Arguably, the first district judge in this case could have overstepped her bounds by initiating the transfer proceedings if they had been opposed by the Commonwealth. Ultimately, however, the prosecutor showed an intent to file a transfer motion and acted as though he had done so at the transfer hearing. Never-

As noted above, the district court's order simply said, "found probable cause," and the court orally found "probable cause to believe that the felony offenses *as charged* were committed." (Emphasis added.) Thus, the court's finding incorporated the charging document, the juvenile petition filed after Appellant was taken into custody. That document lists Appellant's charge as first-degree trafficking in a controlled substance, with no reference to the class of the offense.[8] Since it did not designate the charge as falling within a certain classification, meaning the district court's order likewise did not designate the charge, this Court can look at the classification of the charge as a question of law and stay within the facial-invalidity exception in *Thompson* and *Davis*. Thus, this Court must determine whether Appellant was actually charged with a Class B felony, as a matter of law.

Appellant's claim that he was not charged with a Class B felony turns on the specific language used in the various controlled-substance statutes under which he was charged. The basic statute defining and classifying first-degree trafficking in effect when Appellant was first charged stated that "[a]ny person who violates the provisions of subsection (1) of this section shall ... [f]or the first offense be guilty of a Class C felony." KRS 218A.1412(2).[9] Thus, there is no question he was charged with at least a Class C felony. But such a charge would not make him eligible for transfer, given his age (fifteen). He could only be eligible for transfer if his offense was at least a Class B felony based on some other enhancement statute. Given all the talk at the district court about whether the charge was "firearm enhanced," the obvious option is KRS

---

theless, the bench of this state should tread cautiously and leave charging decisions, including whether to seek transfer of youthful offenders, to the executive branch of government. *See Prater v. Commonwealth,* 82 S.W.3d 898, 907 (Ky.2002) ("No section of the Kentucky Constitution authorizes the judicial branch to exercise executive power if the executive is 'along for the ride.' "); *cf. Manning v. Sims,* 308 Ky. 587, 213 S.W.2d 577, 580 (1948) ("It is essential that the sharp separation of the powers of government be preserved carefully by the courts. Those which are judicial must not be permitted to encroach upon those which are legislative."). It must be clear from the record that the charge on which transfer might be based is the Commonwealth's choice. In light of the record in this case, it is clear that the district court's suggestion that transfer might be appropriate was not improper. Still, it is worth clarifying that the Commonwealth's charging decisions control. Had the county attorney in this case indicated that the Commonwealth was not seeking transfer, any transfer proceedings would have been improper.

8. Other documents in the district court record indicate that at least someone involved in the

case, specifically the Court Designated Work on the case, thought that he had been charged with a Class B felony and would be proceeded against as a youthful offender. For example, the record includes an AOC form titled "Preliminary Inquiry Formal/Informal Processing Criteria and Recommendations," signed by the CDW. The CDW checked the boxes indicating that the child was a youthful offender because he was at least 14 years old at the time of the offense and had been charged with at least a Class B felony. However, another document titled "Pre–Adjudicative Detention Criteria," also an AOC form and also signed by the CDW, has the part checked stating both "[t]he child is charged with a ... Class B felony" and "[t]he child is charged with a Class C or Class D felony," despite the fact that none of the other charges were felonies.

9. The statute stated that a person violating the statute shall "[f]or a second or subsequent offense be guilty of a Class B felony." KRS 218A.1412(2)(b) (2002).

The provision has since been amended to distinguish between two different versions of first offense first-degree trafficking, one of which is a Class D felony and one of which is a Class C felony. *See* 2011 Ky. Acts ch. 2, § 9 (effective June 8, 2011).

218A.992(1)(a), which stated (and still states):

> [A]ny person who *is convicted* of any violation of [Chapter 218A] who, at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm, *shall ... be penalized* one (1) more class severely than provided in the penalty provision pertaining to that offense if it is a felony.

(Emphasis added.)

Appellant argues that because the firearm enhancement statute does not have any effect until the person *"is convicted,"* he could not have been *charged* with an enhanced version of trafficking. He also notes that the statute only elevates the penalty, implying that it has nothing to do with the classification of the offense at the charging stage. In support of his claim, he cites language noting that "KRS 218A.992 is nothing more than a sentencing statute reflecting the dangerous nature of the crime perpetrated by an armed criminal." *Kotila v. Commonwealth,* 114 S.W.3d 226, 248 (Ky.2003), *abrogated on other grounds by Matheney v. Commonwealth,* 191 S.W.3d 599 (Ky.2006) (quoting *Adams v. Commonwealth,* 931 S.W.2d 465, 468 (Ky.App.1996)).

At first glance, this argument is appealing. Unlike other sentencing enhancements, the firearm enhancement specifically requires that the defendant be *convicted* before the penalty is enhanced. This language differs substantially from that used in some other sentencing enhancements, such as having committed the same offense previously. That enhancement, for example, requires only that the defendant have violated the substantive portion of the statute. *See, e.g.,* KRS 218A.1412(2), In such cases, the mere allegation in the charge clearly controls the classification of the offense.

Appellant's argument, however, breaks down under close examination. First, it ignores the fact that the various provisions classifying offenses were drafted primarily with sentencing in mind, not charging. Thus, it is unlikely that the language was chosen to have a certain effect when the concern is with what class of felony was charged. From the perspective of sentencing—that is, after guilt has been admitted or proved and a conviction thus obtained—it does not matter whether an offense was charged as a certain class of felony or another. Indeed, there are very few instances where the classification of an offense from the perspective of charging matters. One of these, obviously, is a juvenile transfer proceeding. The only other that quickly springs to mind is whether an adult charge will be kept in district court (i.e., a misdemeanor charge) or bound over to the grand jury and circuit court resolution (i.e., a felony charge).

An example involving the firearm enhancement statute in this latter circumstance illustrates the more serious flaw in Appellant's argument: it will lead to absurd results. Take the example of an adult charged with first-offense trafficking in less than eight ounces of marijuana. That offense is a Class A misdemeanor. *See* KRS 218A.1421(2)(a). If an adult defendant charged with such an offense also possessed a firearm in furtherance of the offense, the defendant would "[b]e penalized as a Class D felon." KRS 218A.992(1)(b). Again, that enhancement only occurs if the defendant "is convicted." *Id.* Under Appellant's approach to charging under the firearm enhancement statute, the adult would only be *charged* with a misdemeanor, with the enhancement only coming into play after conviction.

But where would such a defendant be tried? District court or circuit court? The offense as charged controls which

court has jurisdiction. KRS 24A.110(2) states that the "District Court has *exclusive jurisdiction* to make a final disposition of any charge or a public offense denominated as a misdemeanor or violation, except where the charge is joined with an indictment for a felony...." (Emphasis added.) Since the charge in the example is a misdemeanor, under Appellant's interpretation, only the district court could resolve the case. The "district court has exclusive jurisdiction over misdemeanor charges, KRS 24A.110(1), unless a misdemeanor offense is joined in a felony indictment," and the circuit court is "without jurisdiction to try" such charges. *Dickerson v. Commonwealth,* 174 S.W.3d 451, 460 (Ky.2005). Freestanding misdemeanor charges that somehow find their way into circuit court should be remanded to the district court. *Id.* So strong is the jurisdictional divide, that this Court has granted the extraordinary writ of prohibition to bar a circuit court from proceeding in such a case. *See Peterson v. Shake,* 120 S.W.3d 707 (Ky.2003).

 Yet, upon conviction, the hypothetical offense becomes a Class D felony. *See* KRS 218A.992. And the district courts of this Commonwealth do not have jurisdiction to make final dispositions of felonies. *See* KRS 24A.110(1); *Commonwealth v. Stephenson,* 82 S.W.3d 876, 887–88 (Ky.2002) ("[D]istrict courts cannot make final dispositions as to felony offenses."); *Waugh v. Commonwealth,* 605 S.W.2d 43, 45 (Ky.App.1980) ("KRS 24A.110 gives no jurisdiction for final disposition of felony cases to the district courts. Such is reserved to the circuit courts."). Instead, "[a]s far as ... felony offenses [a]re concerned, the district court c[an] act only as an examining court." *Keller v. Commonwealth,* 594 S.W.2d 589, 592 (Ky.1980); *see also* KRS 24A.110(3) (giving the district court, "concurrent with

Circuit court, jurisdiction to examine any charge of a public offense denominated as a felony"). In other words, district courts can only address preliminary matters, such as making a probable cause finding and then "hold[ing] the defendant to answer in the circuit court," RCr 3.14(1), when the charged offense is a felony. Thus, if a district court tries such a firearm enhanced trafficking charge, it has exceeded its jurisdiction.

Appellant's interpretation of the firearm enhancement statute, which only alters the classification of an offense upon conviction, thus has a perverse, absurd effect. In essence, it means that such a charge cannot properly be resolved in any court, unless one considers the entire district court trial of the claimed misdemeanor—complete with a jury, the beyond-a-reasonable-doubt burden of proof, and a finding as to guilt—to be an "examining" proceeding after which the charge would be bound over to the grand jury. But such an examining-trial approach would be barred by double jeopardy, since it would result in a decision as to the defendant's guilt, which would bar a second trial at the circuit court. *See United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (noting the double jeopardy clause incorporates the idea of *autrefois convict,* or previous conviction, to bar retrial). Thus, this Court cannot see the sense in such a reading of the statute.

 Nor can this Court apply a different reading to different circumstances in which the classification of the charged offense matters. Thus, we are forced to conclude that a firearm enhanced drug offense is actually *charged* at the higher level regardless of the procedural circumstances. This reading comports with the common understanding among the bench and bar that such a trafficking offense is charged as an "enhanced" offense and is

classified as a higher level offense at the time of charging. In fact, this Court has in the past equated the firearm enhancement with other statutory enhancements that elevate the classification of an offense, even at the charging level. *See Kotila,* 114 S.W.3d at 248 ("KRS 218A.992 merely increases the classification of the underlying offense, just as proof of a prior conviction can serve to enhance the penalty for a subsequent offense."). Thus, Appellant's trafficking offense was actually charged as a Class B felony,[10] which made him eligible for transfer to the circuit court as a youthful offender. Because the district court's order found probable cause that Appellant committed this offense, it was valid on its face.

### III. Conclusion

Because the district court's order was valid on its face, and this Court sees no other reason to doubt that the circuit court properly acquired jurisdiction in this case, the Court of Appeals is affirmed.

All sitting. All concur.

---

10. Appellant also implies that because the charge at the district court itself did not list the trafficking offense as firearm enhanced, it was insufficient to set the transfer wheels in motion. At least in this case, the charging document at the district court also included the additional charge of possession of a handgun by a minor. Thus, it is clear that the Commonwealth was pursuing firearm-related charges against Appellant. Had the county attorney chosen only to charge a trafficking offense, without calling it firearm enhanced, and the fact of the juvenile's possession of a firearm was only revealed in testimony, this might be a more difficult case. To avoid problems in such cases in the future, this Court can again only warn the bench of the Commonwealth to leave such charging decisions to the Commonwealth. If the county attorney chooses not to charge the juvenile in such a way as to allow transfer, that is an appropriate choice that the district court ought not to disturb. County attorneys, like prosecutors across the United States, have discretion as to what charges to pursue. *See Commonwealth v. McKinney,* 594 S.W.2d 884, 888 (Ky.App.1979) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . ., generally rests entirely in his discretion." (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978))).