**Terry D. MILLS, Appellant**

**v.**

**DEPARTMENT OF CORRECTIONS OFFENDER INFORMATION SERVICES, Appellee.**

**No. 2011–SC–000755–DG.**

Supreme Court of Kentucky.

Aug. 21, 2014.

Jason Apollo Hart, Assistant Public Advocate, Counsel for Appellant.

Allison Rene Brown, Department of Corrections, Office of Legal Services, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

Terry Mills pleaded guilty to several offenses, mostly drug-related, the most serious of which were manufacturing methamphetamine while in possession of a firearm and being a first-degree persistent felony offender. In total, Mills received a maximum sentence of 20 years' imprisonment.

Based on his convictions, the Department of Corrections classified Mills as a violent offender. This meant that Mills must serve at least 85 percent of his sentence—17 years—before he could be considered eligible for parole. Without the violent offender classification, Mills would have reached parole eligibility after serving 10 years of his sentence.

Mills contested this violent-offender classification and sued the Department in circuit court to block its application to him, arguing that his convictions were all non-

violent drug offenses. The circuit court dismissed Mills's suit.

The Court of Appeals affirmed the circuit court's dismissal. In doing so, the court noted that the firearm-enhancement provision of the Controlled Substances Act, Kentucky Revised Statutes (KRS) 218A.992, was clear and served to elevate Mills's conviction for manufacturing methamphetamine from a Class B to a Class A felony. And a Class A felony conviction, the Court of Appeals observed, qualified Mills for classification as a violent offender under KRS 439.3401 and subjected him to the 85 percent parole eligibility requirement.

We accepted discretionary review to examine the application of the firearm-enhancement provision of the Controlled Substances Act, KRS 218A.992, and address whether the statute enhances the underlying conviction or only enhances the sentence to be imposed on the underlying conviction. We agree with the Court of Appeals and hold the underlying conviction is enhanced. Essentially, as a result of KRS 218A.992's enhancement provision, a defendant is charged with an enhanced crime.

## I. ANALYSIS.

By Mills's estimation, the Department engaged in the following fallacious syllogism: (1) A defendant convicted of a Class A felony is a violent offender under KRS 439.3401; (2) Mills pleaded guilty to manufacturing methamphetamine while in possession of a firearm, a Class B felony; (3) KRS 218A.992 allows for a drug crime to be enhanced one felony class when the defendant possesses a firearm in furtherance of the crime; therefore, (4) Mills stands convicted of a Class A felony, making him a violent offender.[1]

1. We note that the Grand Jury charged Mills in the original indictment with Manufacturing

Methamphetamine with Firearm Enhancement, a Class A Felony, and the circuit court

The thrust of Mills's attack on the Department's logic is that there was actually no Class–A–felony *conviction* for KRS 439.3401 to apply to, and the General Assembly did not intend for any nonviolent drug offense—such as Mills's manufacturing methamphetamine—to carry the weight of a Class A felony.

■■■ The facts of Mills's underlying conviction are not in dispute before us. As a result, this case presents only issues of statutory interpretation to be reviewed de novo. The analysis of the lower courts is entitled to no deference.[2] Generally speaking, when interpreting statutes, this Court focuses on "giv[ing] the words of the statute their literal meaning and effectuat[ing] the intent of the legislature."[3] But even if the language is clear, we will not promote an absurd result.[4] This case presents such an example: the language is clear on its face, yet, the result is patently absurd.

The proper resolution of Mills's appeal primarily revolves around two statutes:

**KRS 218A.992:** (1) Other provisions of law notwithstanding, any person who is convicted of any violation of this chapter who, at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm, shall: .

 (a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony; or

 (b) Be penalized as a Class D felon if the offense would otherwise be a misdemeanor.

**KRS 439.3401:** (1) As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of:

 (a) A capital offense;

 (b) A Class A felony;

 (c) A Class B felony involving the death of the victim or serious physical injury to a victim; ....

In reading these statutes, especially KRS 218A.992, it becomes readily apparent that the statutes are confusingly drafted. The choice of the words *convicted* and *penalized* in KRS 218A.992 is especially troublesome. The gravamen of Mills's complaint before this Court essentially rests on these two words and their meaning within the broader statutory criminal framework. As it turns out, we have had little opportunity to interpret the import of *convicted* and *penalized,* particularly with relation to violent-offender status and parole eligibility.

The plain reading of KRS 218A.992 seemingly favors Mills's position. That is to say, the crime of which Mills was actually convicted was a Class B felony[5]—not Class A—when *convicted* is given its common meaning; and, *penalized* would indicate that Mills should only be punished more severely for the Class B felony conviction, in turn eliminating the possibility of violent-offender status. In fact, there is some support for this reading in our case

---

found that Mills pleaded guilty to a Class A Felony.

**2.** *Commonwealth v. Love,* 334 S.W.3d 92, 93 (Ky.2011).

**3.** *Samons v. Kentucky Farm Bureau Mut. Ins. Co.,* 399 S.W.3d 425, 429 (Ky.2013).

**4.** *See, e.g., George v. Alcoholic Beverage Control Bd.,* 421 S.W.2d 569, 571 (Ky.1967).

**5.** The Department does not suggest that Mills's Class B felony involved the death of a victim or serious physical injury to a victim. Accordingly, Mills's Class B felony, without firearm enhancement, would not otherwise qualify Mills for classification as a violent offender. We note again, however, that Mills was indicted for a Class A felony. Mills does not challenge this.

law, which is, admittedly, nearly as confusing as the statutes sought to be applied here. For example, in *Kotila v. Commonwealth*,[6] the Court, seemingly in dicta, noted KRS 218A.992 "merely increases the classification of the underlying offense, just as proof of a prior conviction can serve to enhance the penalty for a subsequent offense."[7] Going further, the *Kotila* Court noted, "it would be entirely proper to reserve the enhancement issue for the penalty phase using instruction forms similar to those recommended for subsequent offense enhancement."[8] Clearly, the *Kotila* Court found KRS 218A.992 to operate essentially the same as our PFO statute, KRS 532.080: only the associated sentence is enhanced rather than the classification of the underlying offense.

This interpretation is not confined to this Court. Before *Kotila*, in *Adams v. Commonwealth*, the Court of Appeals determined that "KRS 218A.992 provides an enhanced penalty for those violating Chapter 218A while in possession of a firearm[ ]" and "[t]he severity of the penalty increases due to the dangerous status of the violator as an armed perpetrator."[9] But the Court of Appeals panel in *Adams*

perceptively recognized that "[t]he possession of a firearm ... is not an element necessary to determine guilt of the substantive offense."[10] As a result, the *Adams* panel concluded "KRS 218A.992 is nothing more than a sentencing statute reflecting the dangerous nature of a crime perpetrated by an armed criminal."[11] The similarity to KRS 532.080 was not lost on the Court of Appeals: "In this respect, the statute is somewhat analogous to both KRS 189A.010 and KRS 532.080, the DUI and PFO statutes."[12]

We acknowledge the facial appeal of the *Kotila* and *Adams* reading of KRS 218A.992. But closer inspection makes apparent the shaky foundation upon which the reading rests; and this Court's recent inspection in *Jackson v. Commonwealth*[13] plainly revealed this flaw. The problem with Mills's reading and, to the extent that *Kotila* and *Adams* remain good law, our own case law's reading is not the attention paid to the General Assembly's use of the terms *convicted* and *penalized*[14]; rather, Mills's argument fails when the statute is read as a whole and all potential applications are considered. We elaborate below,

6. 114 S.W.3d 226 (Ky.2003).

7. *Id.* at 248.

8. *Id.*

9. 931 S.W.2d 465, 468 (Ky.App.1996).

10. *Id.*

11. *Id.*

12. *Id.* While the statutes are similar in the broad sense of enhancing criminal activity, they are not similar at all in text. Furthermore, KRS 189A.010 (DUI enhancement) and KRS 532.080 (PFO enhancement) operate only on prior convictions, not on the conviction at hand. KRS 218A.992 materially differs in this respect. We explain our reasoning for this view below.

13. 363 S.W.3d 11 (Ky.2012).

14. We noted in *Jackson* the General Assembly's odd choice of words in KRS 218A.992. As our bewilderment persists, we reiterate why this drafting is aberrant and confusing: "Unlike other sentencing enhancements, the firearm enhancement specifically requires that the defendant be *convicted* before the penalty is enhanced. This language differs substantially from that used in some other sentencing enhancements, such as having committed the same offense previously. That enhancement, for example, requires only that the defendant have violated the substantive portion of the statute. In such cases, the mere allegation in the charge clearly controls the classification of the offense." *Jackson*, 363 S.W.3d at 22. For comparison, see KRS 532.080, which has no such language.

as our conclusion in *Jackson* remains equally relevant and forceful today.

Before discussing *Jackson,* we reject Mills's attempt at distinguishing its application. At bottom, Mills argues that *Jackson* is only relevant to juvenile cases. Admittedly, *Jackson* did deal with juvenile jurisdiction; but this is where the strength of Mills's argument ends. The weight of *Jackson's* review of KRS 218A.992, however, dealt with a hypothetical involving an *adult.* And, in any event, the analysis we undertook in *Jackson* is undeniably relevant here because we are faced with the same statute and essentially the same issue.

A month before *Jackson's* sixteenth birthday, the police and Jackson's juvenile caseworker found him in possession of cocaine, marijuana, and a handgun. As a result, Jackson was charged with first-degree trafficking in a controlled substance (cocaine), a Class C felony, and possession of marijuana, possession of drug paraphernalia, and possession of a handgun by a minor: all misdemeanors. But Jackson's felony drug-trafficking offense was not specifically listed as firearm-enhanced on his juvenile petition. Jackson was indicted for a Class B felony, ostensibly because of the firearm enhancement outlined in KRS 218A.992, and prosecution was transferred from district to circuit court. The indictment discrepancy gave rise to the central issue in the case: What impact does enhancing a crime under KRS 218A.992 have on jurisdiction of the court in which the charge is prosecuted?

Much like Mills's instant argument in substance, Jackson argued his transfer to circuit court was improper because the district court, with its exclusive and original jurisdiction of juvenile cases, did not make the statutorily required findings [15] and, particularly relevant here, Jackson was not charged with a felony classification that warranted transfer.[16] According to Jackson, "the firearm enhancement statute does not have any effect until the person *'is convicted'"*; therefore, "he could not have been *charged* with an enhanced version of trafficking." [17] Again, much like Mills here, Jackson cited *Kotila* and *Adams* as support for the view that KRS 218A.992 is nothing more than a sentence-enhancing statute. We reaffirm our position in *Jackson* and reject this notion.

 As was the case with Jackson's similar attempt, the problem with accepting Mills's argument is that, to the extent there exists a clear understanding of district court and circuit court jurisdiction among the bench and bar, it is thrown into utter disarray. Indeed, KRS 218A.992 becomes a jurisdictional conundrum when we consider, for example, "firearm-enhanced" misdemeanors within Chapter 218A. Of course, Mills's particular situation does not present jurisdictional concerns because he was initially charged with a felony; but, in

---

15. The Court held the district court's findings were sufficient. Because this holding does not affect analysis of the matter at bar, we only mention it here.

16. Jackson argued he was only charged with a Class C felony, which was insufficient, given his age, to allow transfer to circuit court. Under KRS 635.020(2)–(3), only a capital offense, Class A felony, or Class B felony allows transfer to circuit court of a juvenile without prior public-offender adjudication. Of course, KRS 635.020(4) mandates transfer to circuit court when a firearm is involved and the juvenile is over fourteen years of age. Given the district court's findings, however, the Court determined it was unlikely the district court proceeded under subsection (4); and, regardless, the Court noted subsection (4) was largely immaterial because the district court proceeded properly under subsection (2).

17. *Jackson,* 363 S.W.3d at 22.

*Jackson,* we clearly described the paradox we seek to avoid today:

> Take the example of an adult charged with first-offense trafficking in less than eight ounces of marijuana. That offense is a Class A misdemeanor. If an adult defendant charged with such an offense also possessed a firearm in furtherance of the offense, the defendant would "[b]e penalized as a Class D felon." Again, that enhancement only occurs if the defendant "is convicted." Under [Jackson's and, essentially, Mills's] approach to charging under the firearm enhancement statute, the adult would only be *charged* with a misdemeanor, with the enhancement only coming into play after conviction.
>
> *But where would such a defendant be tried? District court or circuit court?*[18] The offense as charged controls which court has jurisdiction. KRS 24A. 110(2) states that "the District Court has *exclusive jurisdiction* to make a final disposition of any charge or a public offense denominated as a misdemeanor or violation, except where the charge is joined with an indictment for a felony...." Since the charge in the example is a misdemeanor, under [Jackson's and Mills's] interpretation, only the district court could resolve the case.... [T]he circuit court is "without jurisdiction to try" such charges. Freestanding misdemeanor charges that somehow find their way into circuit court should be remanded to the district court. So strong is the jurisdictional divide, that this Court has granted the extraordinary writ of prohibition to bar a circuit court from proceeding in such a case.
>
> Yet, upon conviction, the hypothetical offense becomes a Class D felony. And the district courts of this Commonwealth do not have jurisdiction to make final dispositions of felonies. Instead, "[a]s far as ... felony offenses [a]re concerned," the district court c[an] act only as an examining court. In other words, district courts can only address preliminary matters, such as making a probable cause finding and then "hold[ing] the defendant to answer in the circuit court," when the charged offense is a felony. *Thus, if a district court tries such a firearm enhanced trafficking charge, it has exceeded its jurisdiction.*[19]
>
> [Jackson's and Mills's] interpretation of the firearm enhancement statute, which only alters the classification of an offense upon conviction, thus has a perverse, absurd effect. In essence, it means that such a charge cannot properly be resolved in any court, unless one considers the entire district court trial of the claimed misdemeanor—complete with a jury, the beyond-a-reasonable-doubt burden of proof, and a finding as to guilt—to be an "examining" proceeding after which the charge would be bound over to the grand jury. But such an examining-trial approach would be barred by double jeopardy, since it would result in a decision as to the defendant's guilt, which would bar a second trial at the circuit court. Thus, this Court cannot see the sense in such a reading of the statute.
>
> .... [W]e are forced to conclude that a firearm enhanced drug offense is actually *charged* at the higher level regardless of the procedural circumstances. This reading comports with the common understanding among the bench and bar that such a trafficking offense is charged as an "enhanced" offense and is classi-

---

18. Emphasis added.

19. Emphasis added.

fied as a higher level offense at the time of charging.[20]

In sum, KRS 218A.992 cannot be read as Mills argues here because it would result in the evisceration—or, at the very least, blending beyond recognition—of the statutory jurisdictional demarcations between general-jurisdiction circuit courts and limited-jurisdiction district courts. Misdemeanors, when not joined with felonies,[21] may *only* be tried in district court. District courts, do not, however, have *any* jurisdiction to make final dispositions of felony offenses.[22] That authority rests with the circuit courts.

■ Of course, when interpreting statutes, we operate under the presumption that the legislature did not intend an absurd result.[23] Accordingly, we are left with little choice but to conclude that Mills was properly classified as a violent offender under KRS 439.3401 because KRS 218A.992 effectively enhanced the classification of the charged offense; that is, Mills was essentially convicted of a Class A felony, rather than Class B.[24] This result avoids the certain absurdity of reading KRS 218A.992 to apply only post-conviction and, therefore, permit district courts to impose felony sentences or, more confusing yet, transfer the case to circuit

courts for sentencing. With regard to creating or reading into the statute a transfer mandate or methodology, we find it not only unwise or unnecessary, but contrary to RCr 1.04's salutary prescription that our Rules of Criminal Procedure "be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Surely, a post-conviction transfer for the purpose of sentencing does not secure simplicity in procedure or eliminate unjustifiable expense or delay.

Finally, Mills urges us to review the legislative history of KRS 218A.992. Specifically, Mills cites statements uttered by the then-House Judiciary Committee Chairman and sponsor of House Bill 455, which amended KRS 439.3401 to include the requirement that violent offenders serve 85 percent of their sentence before becoming eligible for parole.[25] Mills argues the statements tend to support his argument that the General Assembly had no intention of enhancing nonviolent drug offenses to violent-offender status. Our response to that assertion is simple: the General Assembly should have stated as much. The record is clear that KRS 439.3401 has been amended on multiple

20. *Jackson,* 363 S.W.3d at 22–24 (internal citations omitted).

21. Misdemeanors may only be tried in circuit court when joined with felonies. *See* KRS 24A.110(2); *see, e.g., Keller v. Commonwealth,* 594 S.W.2d 589, 591–92 (Ky.1980).

22. *See, e.g., Commonwealth v. Stephenson,* 82 S.W.3d 876, 887–88 (Ky.2002); *see also* Kentucky Rules of Criminal Procedure (RCr) 11.04 (requiring a judgment of conviction to contain the sentence).

23. *Shawnee Telecom Resources, Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky.2011) ("We presume that the General Assembly intended for the statute to be construed as a whole, for all of

its parts to have meaning, and for it to harmonize with related statutes. We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one.") (internal citations omitted); *Workforce Dev. Cabinet v. Gaines,* 276 S.W.3d 789, 793 (Ky.2008).

24. Considering Mills's indictment, it appears this was the practical understanding of KRS 218A.992 when Mills was charged.

25. A portion of Mills's primary brief before this Court was stricken for violating our rules. The Commonwealth made a motion to strike Mills's reply brief, alleging the same violation that prompted the editing of Mills's primary brief. We now deny that motion.

occasions following the enactment of KRS 218A.992.

■ We resort to extrinsic aids such as legislative history "[o]nly if the statute is ambiguous or otherwise frustrates a plain reading[.]"[26] Here, given the text and its seemingly sole non-absurd interpretation, we see no need to engage on an "excursion[ ] beyond the interpretative terra firma of text and context, into the swamps of legislative history."[27] The text of the statute is sufficiently clear. Resorting to excerpts of commentary by a single legislator, no matter his rank, makes little sense in light of the fact that the General Assembly spoke as a body in enacting the legislation as it currently stands. If violent-offender immunity for nonviolent drug offenses is what the General Assembly intended, legislative action can easily be taken, political climate aside.[28] As of now, we can only interpret the statute as currently enacted; and we see no plausible reading other than the one we adopt today.

In conclusion, KRS 218A.992 operates to enhance crimes within its scope at the charging stage. Because of this, Mills was essentially *convicted* of a Class A felony and sentenced accordingly. Of course, Class A felonies are clearly listed in the criteria for violent-offender classification. So we must affirm Mills's classification.

## II. CONCLUSION.

KRS 218A.992 operates to enhance the conviction, not simply the sentence. Any other reading, no matter how appealing, does violence to the jurisdictional system set up by the General Assembly. Because of KRS 218A.992's enhancement, Mills was effectively convicted of a Class A felony, thus, under KRS 439.3401, qualifying him as a violent offender. Accordingly, we affirm the Department's classification of Mills as a violent offender.

All sitting. All concur.

---

26. *Shawnee Telecom,* 354 S.W.3d at 551.

27. *Lawson v. FMR LLC,* 571 U.S. ——, 134 S.Ct. 1158, 1176, 188 L.Ed.2d 158 (2014) (Scalia, J., concurring).

28. Indeed, the General Assembly has amended 218A.992 several times and even excluded several offenses, mostly misdemeanors. We are presented with no evidence to indicate this process could not continue.