# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0158-MR

TIMOTHY COLE MCNEAL                  APPELLANT

ON APPEAL FROM MCCRACKEN CIRCUIT COURT
V.         HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
NO. 21-CR-01014

COMMONWEALTH OF KENTUCKY           APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, VACATING IN PART, AND REMANDING**

A McCracken County jury found Timothy Cole McNeal guilty of first-degree trafficking in methamphetamine, greater than two grams, second or subsequent offense, firearm enhanced; operating a motor vehicle under the influence of alcohol/substances (DUI); resisting arrest; and having no/expired registration plates.  He also entered a conditional *Alford* plea[1] to a severed charge of being a convicted felon in possession of a handgun.  McNeal received a total sentence of 30 years' imprisonment, a $500 fine for DUI, a $150 fine for no/expired registration plates, and a $250 fine for resisting arrest.  He appeals to this Court as a matter of right.[2]

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] KY. CONST. § 110(2)(b).

Having carefully reviewed the record, law, and briefs, we affirm McNeal's convictions, the sentence of imprisonment, and the imposition of fines for DUI and no/expired registration plates. However, we must vacate the fine for resisting arrest because McNeal was determined to be an indigent person and remand for entry of a new judgment consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

On the afternoon of November 5, 2021, Deputy Zackary Dunigan of the McCracken County Sheriff's Office observed McNeal driving a Chevy Malibu with an expired temporary registration tag. After Deputy Dunigan effected a traffic stop, McNeal produced his driver's license, proof of insurance, and a receipt for the registration of the car. The registration receipt, however, did not have an assigned registration number. Deputy Dunigan inquired why McNeal had failed to obtain a registration plate. As McNeal responded that he had bought the car from Bud's, a dealership in Paducah, Deputy Dunigan noticed McNeal was slurring his words and covering his mouth as he spoke.

Deputy Dunigan returned to his vehicle and ran a check which confirmed that a registration number had not been assigned to McNeal's vehicle. A criminal history report indicated that McNeal had prior drug trafficking and firearm charges. Deputy Dunigan returned to McNeal's vehicle and informed him the registration was not valid. McNeal told Deputy Dunigan that he was on his way to the dealership to pick up another temporary tag.

Deputy Dunigan told McNeal he was going to call the dealership to verify the registration and instructed McNeal to exit his vehicle. Deputy Dunigan

2

requested McNeal's permission to conduct a quick pat-down search. McNeal consented and Deputy Dunigan felt a sizeable baggie of pills in McNeal's pocket. Deputy Dunigan ordered McNeal to put his hands on his head and told him he was being detained.

McNeal became argumentative and attempted to flee as Deputy Dunigan tried to handcuff him. Deputy Dunigan grabbed McNeal who flailed his arms and struggled to free himself. During the struggle, McNeal's sweatshirt came off and he began to run away. Deputy Dunigan deployed his taser and was able to subdue and handcuff McNeal.

While McNeal was on the ground, Deputy Dunigan removed the baggie of pills from his pocket. The baggie contained approximately 160 pills which Deputy Dunigan suspected to contain fentanyl. Other deputies arrived on the scene to assist Deputy Dunigan. The assisting deputies also observed that McNeal was slurring his words and noticed the odor of alcohol on his person. The deputies searched McNeal's vehicle and discovered a loaded handgun in the center console.

McNeal was transported to the hospital and consented to a blood test which revealed his blood alcohol content to be .131, well over the legal limit of .08. McNeal was arrested and later indicted on charges of third-degree assault; first-degree trafficking in a controlled substance, carfentanil or fentanyl derivatives, second or subsequent offense, firearm enhanced; possession of a handgun by a convicted felon; DUI; resisting arrest; and having no/expired registration plates. After subsequent laboratory testing revealed the seized pills

contained methamphetamine, a superseding indictment was issued to reflect a charge of first-degree trafficking in a controlled substance, over two grams of methamphetamine, second or subsequent offense, firearm enhanced.

The trial court permitted McNeal to represent himself alongside hybrid co-counsel. Following trial, the jury found McNeal guilty of trafficking in a controlled substance, second or subsequent offense, firearm enhanced, DUI, resisting arrest, and no/expired registration plates. He was acquitted on the charge of third-degree assault. The trial court imposed the jury's recommended sentence of a total of thirty years' imprisonment, a $500 fine for DUI, a $150 fine for no/expired registration plates, and a $250 fine for resisting arrest. Additionally, McNeal received a sentence of 10 years' imprisonment on the felon in possession of a handgun charge which was ordered to run concurrently with the sentence he received at trial. This appeal followed. Additional facts will be developed as necessary.

## LAW AND ANALYSIS

### 1. Trial court properly denied motion to suppress.

McNeal first argues the trial court erred by denying his motion to suppress evidence of the methamphetamine pills based on the plain feel doctrine.[3] We disagree.

---

[3] We note McNeal has failed to brief, and thus abandoned, his argument that Detective Dunagin improperly prolonged the initial traffic stop. *Halvorsen v. Commonwealth*, 671 S.W.3d 68, 74 (Ky. 2023).

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." All warrantless searches are per se unreasonable unless an established exception applies. *Payne v. Commonwealth*, 681 S.W.3d 1, 3 (Ky. 2023). The plain feel doctrine is such an established exception which rests upon "the same principles expressed in the plain view doctrine."[4] *Commonwealth v. Whitmore*, 92 S.W.3d 76, 80 (Ky. 2002). Under the plain feel doctrine, a warrantless seizure may be permitted "[w]hen a police officer lawfully pats down the outer clothing of a suspect and feels an object whose contour or mass makes its identity immediately apparent[.]" *Id.* "[E]vidence can be properly seized under the plain feel doctrine unless the officer doing the pat down manipulated the object in some way before determining it to be contraband or if the contraband is in a container, thus, making its identity not immediately apparent." *Id.*

Although courts have admittedly experienced difficulty in precisely defining the phrase, "immediately apparent," the fundamental issue remains "whether an officer contemporaneously has probable cause to believe that the object being felt is contraband, taking into account the totality of the circumstances." *Commonwealth v. Jones*, 217 S.W.3d 190, 196 (Ky. 2006).

---

[4] The plain view doctrine is founded "on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." *Commonwealth v. Bembury*, 677 S.W.3d 385, 407 (Ky. 2023) (Nickell, J., concurring) (quoting *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)).

The concept of probable cause likewise defies precise definition but has been found to exist "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in a particular place." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 317 (Ky. 2023) (internal quotation omitted). Courts do not require direct evidence of probable cause and may properly "afford 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* (quoting *Commonwealth v. Conner*, 636 S.W.3d 464, 471 (Ky. 2021)).

Appellate review of a trial court's decision on a motion to suppress proceeds on two levels:

> First, we must "determine whether the trial court's findings of fact are supported by substantial evidence." If so, they are conclusive. Second, we must "conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law."

*Payne*, 681 S.W.3d at 4 (internal citations omitted). Ultimately, "reasonableness is the touchstone for any Fourth Amendment analysis[.]" *Bembury*, 677 S.W.3d at 408 (Nickell, J., concurring).

We have reviewed the evidentiary hearing and conclude the trial court's findings of fact are supported by substantial evidence. Thus, they are conclusive. The fundamental issue here is whether the trial court properly applied the facts to the law.

Citing *Jones*, 217 S.W.3d at 195, McNeal contends the incriminating nature of the bag of pills was not immediately apparent because Deputy

6

Dunigan relied upon his training and experience to deduce the item was contraband. In *Jones*, we rejected the Commonwealth's claim under the plain feel exception where an officer felt a prescription pill bottle in a suspect's pocket during a pat down. Recognizing the officer could not determine whether the suspect had a valid prescription prior to inspecting the bottle, we held the incriminating nature of the item was not immediately apparent and further noted, "[t]here is nothing inherently incriminating about carrying a pill bottle in one's pocket." *Id.* at 198.

We perceive the present appeal to be distinguishable from *Jones*. Here, Deputy Dunigan testified he immediately recognized the bulge in McNeal's pocket to be a baggie of pills. Moreover, Deputy Dunigan was aware of McNeal's history of drug trafficking offenses prior to the pat down whereas, in *Jones*, there was no indication the suspect was involved in trafficking drugs. Additionally, the officer in *Jones* did not observe any potentially incriminating behavior prior to conducting the pat down. In the present matter, Deputy Dunigan effected a legitimate traffic stop and observed McNeal behaving suspiciously by slurring his words and covering his mouth. In *Jones*, the officer did not provide any indication of his "level of experience and training in narcotics interdiction" while Deputy Dunigan specifically testified he had five years' experience in law enforcement and had also undergone specific training on the investigation of pills.

Further, while there may be nothing inherently incriminating about a prescription pill bottle, a police officer could reasonably deem the carrying of a

7

large quantity of pills in a plastic baggie to be incriminating. Thus, under the totality of circumstances, we conclude the trial court properly found the existence of probable cause as a matter of law.

## 2. Trial court properly denied directed verdict on subsequent offender enhancement.

Next, McNeal argues he was entitled to a directed verdict on the subsequent offender enhancement contained in KRS[5] 218A.1412(3)(a) because the Commonwealth failed to produce sufficient evidence of prior trafficking convictions. He further contends improper jury instructions deprived him of a unanimous verdict on this issue. We disagree.

Here, the subsequent offender enhancement was predicated on a 2010 Kentucky conviction for one count of facilitation to trafficking in controlled substance, cocaine, second or subsequent offense, and a 2013 federal conviction for one count of conspiracy to possess cocaine base with intent to distribute, three counts of possession with intent to distribute and distribution of cocaine base, and three counts of aiding and abetting possession with intent to distribute and distribution of cocaine base. *Commonwealth v. Timothy Cole McNeal*, McCracken Circuit Court, Case No. 10-CR-00106; *United States v. McNeal*, United States District Court for the Western District of Kentucky, 5:11-cr-00041-TBR. The Commonwealth was permitted, over McNeal's objection, to introduce certified copies of these convictions into evidence during

---

[5] Kentucky Revised Statutes.

8

the penalty phase and did not offer any witness testimony or any other evidence to support the subsequent offender enhancement.

The denial of a motion for directed verdict should not be reversed unless the appellate court determines "it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). When confronted with a motion for directed verdict, the trial court must assume the truth of the Commonwealth's evidence and "draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Id.* A conviction must be based on "evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 187-88. Ultimately, the directed-verdict standard depends on "the statutes creating the offense[,]" and "is not controlled by the law as described in the jury instructions[.]" *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020).

"Other than the fact of a prior conviction," it is well-established that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). We have applied the *Apprendi* holding to various sentencing enhancements under Kentucky law. *Moore v. Commonwealth*, 462 S.W.3d 378, 385 (Ky. 2015) (holding PFO enhancement must be proven beyond reasonable doubt); *Brewer v. Commonwealth*, 478 S.W.3d 363, 377 (Ky. 2015) (holding subsequent offender

9

enhancement for fourth-degree assault must be proven beyond reasonable doubt).  Thus, in the present appeal, the Commonwealth was required to prove the subsequent offender enhancement beyond a reasonable doubt.

Under KRS 218A.1412(1)(b), a person is guilty of first-degree trafficking in a controlled substance "when he or she knowingly and unlawfully traffics in: . . . [t]wo (2) grams or more of methamphetamine[.]"  KRS 218A.1412(3)(a) provides, "[a]ny person who violates the provisions of subsection (1)(a), (b), (c), or (d) of this section shall be guilty of a Class C felony for the first offense and a Class B felony for a second or subsequent offense."  Under KRS 218A.010(48), an offense is considered a second or subsequent offense

> if, prior to his or her conviction of the offense, the offender has at any time been convicted under this chapter, or under any statute of the United States, or of any state relating to substances classified as controlled substances or counterfeit substances, except that a prior conviction for a nontrafficking offense shall be treated as a prior offense only when the subsequent offense is a nontrafficking offense.  For the purposes of this section, a conviction voided under KRS 218A.275 or 218A.276 shall not constitute a conviction under this chapter[.]

Additionally, the word "traffic," as defined in KRS 218A.010(56), "means to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance[.]"

While McNeal has presented a colorable argument that his prior Kentucky criminal facilitation conviction cannot support the application of the subsequent offender enhancement, we need not reach and do not decide the issue because the Commonwealth produced sufficient, independent evidence of

prior trafficking convictions.[6] Specifically, the certified copy of McNeal's 2013 federal convictions for possession with intent to distribute and distribution of cocaine was sufficient to support the enhancement.

McNeal's argument that the jury could not determine from the face of the judgment whether his federal conviction constitutes a trafficking offense is belied by KRS 218A.010(5) which specifically includes possession with intent to distribute within the definition of "traffic." Moreover, the Commonwealth was not required to present additional witness testimony on this issue because the nature of the offense was apparent from the face of the judgment. *Faught v. Commonwealth*, 656 S.W.2d 740, 742 (Ky. 1983).

In *Faught*, we interpreted a prior version of the subsequent offender enhancement and observed the statutory provisions contained in KRS Chapter 218A "do not specify the manner in which prior convictions must be proved." *Id.* This situation remains the same today. Leslie W. Abramson, *Ky. Prac. Substantive Crim. L.* § 12:21 (2024) ("The controlled substances enhancement provisions do not specify the manner in which the prior convictions must be proved."). In *Faught*, however, we rejected the defendant's contention that two probation orders were insufficient evidence of prior controlled substance convictions and explained:

---

[6] We note the Sixth Circuit, in interpreting analogous statutes, has held that a Florida conviction for solicitation to traffic in cocaine could not be used to enhance a conviction for possession with intent to distribute conviction under the career offender provision of the Federal Sentencing Guidelines because solicitation conviction did not satisfy the statutory definition of a controlled substance offense. *United States v. Dolt*, 27 F.3d 235, 238 (6th Cir. 1994).

11

> The Orders of Probation recited appellant's sentences along with the conditions of his probation, and were duly authenticated and signed by the district judge. We think the documents competently proved appellant was adjudged guilty of the offenses for which he was probated and see no reason to reverse his conviction merely because orders of final judgment were not used instead.

*Id.*

We are convinced the rationale of *Faught* extends to the present matter and need not address evidentiary issues arising from the particular requirements of other enhancement statutes. McNeal's federal judgment plainly reflects his conviction of offenses which constitute a prior trafficking offense as contemplated by KRS 218A.010(48) and (56). Additionally, McNeal has neither challenged the identity nor the authenticity of these convictions. Therefore, the trial court properly denied the motion for directed verdict.

Similarly, and again assuming for argument that McNeal's facilitation conviction could not be used to support enhancement, we cannot conclude the jury instructions violated his right to a unanimous verdict or otherwise require reversal.

Jury Instruction No. 22 stated as follows:

If you believe from the evidence beyond a reasonable doubt that the defendant:

1. (A) was convicted of the offense of Facilitation to 1st Degree Trafficking in a Controlled Substance – Cocaine, 2nd or greater offense, by final judgment of the McCracken Circuit Court in Indictment No. 10-CR-00106, on May 13, 2010;

AND/OR

1. (B) was convicted of the offenses of Conspiracy to Possess with Intent to Distribute Cocaine, three counts of Possession with Intent to Distribute and Distribution of Cocaine, and three counts of

12

Aiding and Abetting Possession with Intent to Distribute and Distribution of Cocaine, by final judgment of the United States District Court in Case Number 5:11-CR-00041-TBR, on June 13, 2013;

You shall state in your verdict that you find the defendant to be a subsequent offender under this instruction.

On Verdict Form No. 9, the jury specifically found McNeal to be a subsequent offender under both Instruction 22(1)(A) relative to his Kentucky facilitation conviction and Instruction 22(1)(B) pertaining to his federal convictions.

Under our precedents, it is error to instruct on theories of liability which are not supported by the evidence. *Travis v. Commonwealth*, 327 S.W.3d 456, 462-63 (Ky. 2010). However, an "error resulting only from superfluous language does not present a pure unanimity problem." *Id.* at 463. "On the contrary, such flawed instructions only implicate unanimity if it is reasonably likely that some members of the jury actually followed the erroneously inserted theory in reaching their verdict." *Id.* If there is no indication the jury was misled by the surplusage, then any error is deemed harmless. *Id.*

In the present appeal, the jury separately found beyond a reasonable doubt that McNeal received prior convictions for both criminal facilitation and possession with intent to distribute. This is not a situation where the jury was presented with a combination instruction consisting of mutually exclusive alternatives. Thus, we need not speculate on whether the jury was split with some jurors relying solely on the facilitation conviction and others relying solely

13

on the federal convictions. Thus, we deem the instruction on facilitation to be harmless as mere surplusage. Reversal is unwarranted.

### 3. Expert testimony did not invade province of the jury.

For his third contention of error, McNeal argues the trial court erred by allowing Detective David Clark to opine that possession of 160 pills demonstrated an intent to traffic. Additionally, McNeal takes issue with other aspects of Detective Clark's testimony relative to the drug trade. He further requests this Court to overrule the decision of *Sargent v. Commonwealth*, 813 S.W.2d 801 (Ky. 1991).

In *Sargent*, a majority of this Court held a police officer who was duly qualified as an expert witness may properly opine on whether the drugs in a suspect's possession were "for sale and not personal use." 813 S.W.2d at 802. Additionally, we have approved the admission of expert testimony concerning "the drug trade, including things like baggies being used to package drugs [and] the amount of cocaine in a typical 'hit[.]'" *McCloud v. Commonwealth*, 286 S.W.3d 780, 787 (Ky. 2009). In *Dixon v. Commonwealth*, 149 S.W.3d 426, 430 (Ky. 2004), we further observed this "type of expert opinion . . . has been almost routinely admitted in drug cases."

We decline McNeal's invitation to overrule our established precedent on this issue. While *Sargent* and prior decisions may have been sharply divided, this Court has consistently applied the rationale of the *Sargent* majority in the ensuing decades. *Brown v. Commonwealth*, 416 S.W.3d 302, 310 (Ky. 2013); *Robbins v. Commonwealth*, 336 S.W.3d 60, 66 (Ky. 2011); *McCloud*, 286 S.W.3d

14

at 787-88 n.25; *Dixon*, 149 S.W.3d at 430-31.  As in *McCloud*, we remain convinced our most recent precedents represent "a correct exposition of the law[.]"  286 S.W.3d at 788.

Citing *Ordway v. Commonwealth*, 391 S.W.3d 762, 776 (Ky. 2013), McNeal further argues Detective Clark's testimony violated the rule that "[t]he determination of an individual's guilt or innocence must be based upon the evidence of the particular act in question; it cannot be extrapolated from an opinion, that his behavior after the event comports with some standardized perception of how the 'typical' suspect behaves."  However, *Ordway* specifically recognized a distinction between proper opinion testimony based on a police officer's training and experience and improper "predictions of specific human behavior . . . and opinions based thereon [which] have not yet reached the level of scientific reliability to be worthy of admission as evidence in a court of law." *Id.* at n.6.

We conclude Detective Clark's testimony fell comfortably within the parameters established by *Sargent, Dixon*, and *McCloud*.  He described his extensive training and experience in drug investigation, particularly within the Western Kentucky region and McCracken County in particular.  Detective Clark testified it was common to find methamphetamine in pressed pill form and that a typical dosage consists of 1 to 2 pills.  He estimated the market price for methamphetamine was between $15 and $25 per pill.  Detective Clark stated violence and drugs go hand in hand and that traffickers often carry firearms to protect themselves and their illegal inventory.  He further testified

15

that drug traffickers often use digital applications to receive payment and no longer carry large amounts of cash for fear of robbery and seizure by law enforcement. Ultimately, Detective Clark opined that possession of 160 pills was indicative of trafficking rather than personal use. We discern no abuse of discretion relative to the admission of this evidence.

### 4. Trial court properly admitted evidence of drug analysis.

McNeal next argues the trial court should have excluded, on the ground of unfair surprise, evidence of a laboratory report confirming that over two grams of methamphetamine were tested. We disagree.

Kentucky State Police (KSP) forensic specialist Branden Hinkley examined the 160 pills seized from McNeal during the traffic stop. Noting the pills were similar in overall appearance including size, shape, and color, he selected one representative pill at random for chemical analysis per KSP laboratory protocol. Hinkley issued a report concluding that the pills which he collectively referred to as "Item 1" contained methamphetamine and weighed approximately 39 grams. Subsequent to this initial report, McNeal filed a motion for additional testing, which he later withdrew. However, the Commonwealth nevertheless requested Hinckley to test an additional number of pills so the combined weight of all the pills tested would exceed two grams.

Hinkley tested eight pills at random and determined all the pills contained methamphetamine with a combined weight of 2.21 grams. A second report was issued relative to Hinkley's findings. However, the findings concerning one of the eight pills was inadvertently omitted such that the report

16

indicated the total weight of the second round of testing amounted to less than two grams.

Just prior to trial, the Commonwealth realized Hinkley's second report was incomplete. Hinkley issued a corrected report with the eighth pill included which resulted in a combined weight of over two grams. The corrected report was made available to McNeal on the first day of trial after he had raised the issue of inadequate testing in his opening statement. McNeal objected to Hinkley's testimony on the second day of trial relative to the second round of testing and corrected report, which the trial court overruled.

In Kentucky, the scope of discovery in criminal proceedings is defined by RCr[7] 7.24 which states in pertinent part:

> Upon written request by the defense, the attorney for the Commonwealth shall disclose . . . (b) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, that are known by the attorney for the Commonwealth to be in the possession, custody or control of the Commonwealth, and (c) upon written request by the defense, the attorney for the Commonwealth shall furnish to the defendant a written summary of any expert testimony that the Commonwealth intends to introduce at trial. This summary must identify the witness and describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

"The overarching purpose of our criminal discovery rules is to prevent" gamesmanship and unfair dealing. *Stieritz v. Commonwealth,* 671 S.W.3d 353, 367 (Ky. 2023).

---

[7] Kentucky Rules of Criminal Procedure.

A trial court possesses broad discretion to remedy alleged discovery violations. *Id.* Moreover, "[w]hile 'the Commonwealth cannot claim ignorance in order to avoid an RCr 7.24(1) violation,' this Court's refusal to excuse an unintentional discovery violation does not relieve a defendant from the burden of demonstrating sufficient resulting prejudice to justify reversal." *Id.* (quoting *Trigg v. Commonwealth*, 460 S.W.3d 322, 326 (Ky. 2015)). We will only reverse on this issue "where there exists a reasonable probability that had the evidence been disclosed the result at trial would have been different." *Akers v. Commonwealth*, 172 S.W.3d 414, 417 (Ky. 2005) (quoting *Weaver v. Commonwealth*, 955 S.W.2d 722, 725 (Ky. 1997)).

We cannot conclude the late disclosure of the corrected laboratory report fundamentally affected the fairness of McNeal's trial or would have otherwise changed the result. Well before trial, McNeal was undoubtedly aware that Hinkley determined the entire batch of 160 pills to contain methamphetamine with a total combined weight of 39 grams based on a random sampling of one pill. Additional testing also confirmed the presence of methamphetamine in other pills. Thus, it could be no real surprise that the omitted pill on the second report was also determined to contain methamphetamine.

We further note the Commonwealth was not required to present proof that the combined weight of pills actually tested exceeded two grams. In Kentucky, a conviction for drug trafficking may be upheld based upon an extrapolation from random sampling. *Taylor v. Commonwealth*, 984 S.W.2d

18

482, 485 (Ky. App. 1998). In considering the sufficiency of such evidence, a reviewing court should look to whether:

> a proper random selection procedure was employed; the tested and untested substances were contemporaneously seized at the search scene; the tested and untested substances were sufficiently similar in physical appearance; the scientific testing method conformed with an accepted methodology; all of the samples subjected to scientific analysis tested positive for the same substance; and the absence of evidence that the untested substance was different from the tested substance.

*Id.* Additionally, in *United States v. Jackson*, 470 F.3d 299, 309-10 (6th Cir. 2006), the Sixth Circuit explained that where a defendant fails to challenge the scientific reliability and relevancy of a random sampling methodology, the issue concerns the weight rather than the admissibility and sufficiency of the evidence.

Applying the *Taylor* factors to the present appeal, it is clear the Commonwealth produced legally sufficient evidence to convict McNeal based on Hinkley's first report. The trial court correctly perceived the issue regarding the inadvertent omission of the pill from the second report to involve the weight of the evidence. McNeal was afforded the opportunity to fully cross-examine Hinkley regarding his findings. Based on this evidence and the tenor of the trial as whole, we cannot conclude the late disclosure of the corrected report affected the outcome of McNeal's trial.

### 5. Closing argument did not constitute prosecutorial misconduct.

McNeal argues he was entitled to a mistrial because the Commonwealth improperly interjected the issue of race during closing argument. We disagree.

During closing argument, the Commonwealth stated:

19

What happens here in court, and what happens on the street between the police and the people they investigate for drug trafficking is not a game. There is a tendency in pop culture, some of you guys who are a littler younger might get it, some of you that are older may have never heard this, but in pop culture and the music of my youth, it was often referred, drug trafficking was referred to as the dope game. The police versus the trafficker, as if it's two players on a board, chess game, us versus them, both sides making moves. One player's objective, the trafficker's objective is to make money and make as much money as possible. If you make money, you win the game. And the other player's objective, the police officer, their objective in the game is to lock the drug trafficker up. But not because it's the right thing to do, not even because it's the police officer's job. But because the police resent the drug trafficker because of the easy money they can make. Or maybe, as has been implied in this case, because of the drug trafficker's race. I think that our justice system and some[.]

At this point, McNeal objected and requested a mistrial, claiming he had not asserted that race was a factor in the case. The trial court denied a mistrial but nevertheless instructed the Commonwealth to move on from the topic.

This Court has defined prosecutorial misconduct as an "improper or illegal act . . . involving an attempt to . . . persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011) (citing Black's Law Dictionary (9th ed. 2009)). Misconduct can occur in a variety of forms, including improper closing argument. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (citing *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)). Any allegation of misconduct must be viewed in the context of the overall fairness of the trial. *Commonwealth v. McGorman*, 489 S.W.3d 731, 742 (Ky. 2016).

For reversal to be justified, the prosecutorial misconduct must be "so serious as to render the entire trial unfair." *Soto v. Commonwealth*, 139

20

S.W.3d 827, 873 (Ky. 2004) (quoting *Stopher v. Commonwealth*, 57 S.W.3d 787, 805 (Ky. 2001)). We have repeatedly held that argument is not evidence and prosecutors may properly "comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987).

We cannot conclude the Commonwealth engaged in prosecutorial misconduct. During opening statement, McNeal reminded the jurors that he was innocent until proven guilty despite his appearance and any stereotypes they may have harbored against him. Additionally, when Detective Dunagin's bodycam footage was played for the jury, McNeal can clearly be heard accusing Detective Dunagin of profiling him and yelling "Black Lives Matter" while he was being handcuffed on the ground. On the bodycam video, McNeal could also be heard claiming the deputies were violating his civil rights. The Commonwealth's reference to implications of racial bias was clearly responsive to McNeal's opening statement and the evidence presented on the bodycam footage. We discern no attempt on the part of the Commonwealth to inflame or improperly influence the jury. The trial court properly denied McNeal's request for a mistrial.

### 6. Application of subsequent offender and firearm enhancements did not amount to improper double enhancement.

McNeal argues he was subjected to an improper double sentencing enhancement by operation of the increased penalty for subsequent offenders contained in KRS 218A.1412(3)(a) and possession of a firearm under KRS

21

218A.992(1). He concedes this error is unpreserved and requests palpable error review pursuant to RCr 10.26.

As described in additional detail above, the subsequent offender enhancement in KRS 218A.1412(3)(a) elevates second or subsequent charges of drug trafficking from a Class C to a Class B felony. The firearm enhancement is contained in KRS 218A.992 which states in pertinent part:

> (1) Other provisions of law notwithstanding, any person who is convicted of any violation of this chapter who, at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm, shall:

> (a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony[.]

The legislature possesses plenary authority to fix the penalties for crime subject only to constitutional restraints. *Workman v. Commonwealth*, 429 S.W.2d 374, 377 (Ky. 1968). The question of "whether punishments are 'multiple' is essentially one of legislative intent." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 39 (Ky. 2011) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)). Properly understood, double enhancement "occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions that necessarily overlap, are indistinct, and serve identical purposes." *United States v. Rojas*, 531 F.3d 1203, 1207 (10th Cir. 2008) (quoting *United States v. Reyes Pena*, 216 F.3d 1204, 1209 (10th Cir. 2000)).

It is evident that application of both the subsequent offense and firearm enhancements does not result in an improper double enhancement. The

22

purpose of the subsequent offense enhancement contained in KRS 218A.1412(3)(a) is "to deter drug crimes . . . by establishing more serious penalties for repeat offenders of the Kentucky Controlled Substances Act." *Morrow v. Commonwealth*, 77 S.W.3d 558, 560 (Ky. 2022). By contrast, the imposition of the firearm enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Commonwealth v. Montaque*, 23 S.W.3d 629, 632 (Ky. 2000) (quoting *United States v. Sanchez*, 928 F.2d 1450, 1459 (6th Cir. 1991)). Thus, the enhancements are clearly distinct, serve different purposes, and cover different conduct.

Moreover, our decision in *Mills v. Dept. of Corrections Offender Info. Servs.*, 438 S.W.3d 328, 335 (Ky. 2014), forecloses McNeal's argument that the subsequent offense and firearm enhancements should not "aggregate and elevate a Class C felony to a violent Class A offense."[8] In *Mills*, this Court directly held the application of the firearm enhancement in "KRS 218A.992 operates to enhance crimes within its scope at the charging stage." In other words, "KRS 218A.992 operates to enhance the conviction, not simply the sentence." *Id.* Thus, a person who is charged with first-degree trafficking as a Class B felony "is essentially *convicted* of a Class A felony" by virtue of the firearm enhancement. *Id.* We further observed the General Assembly could

---

[8] While *Mills* did not specifically discuss the interplay between the subsequent offense and firearm enhancements, we are convinced its reasoning applies with equal force to the present matter.

easily extend "violent-offender immunity for nonviolent drug offenses" if that was its intention.  *Id.*

Additionally, we do not perceive any ambiguity concerning the application of both enhancements in the present matter.  In *Mills*, our criticism of the legislature's drafting of KRS 218A.922 was directed at the "the import of [the terms] *convicted* and *penalized*, particularly with relation to violent-offender status and parole eligibility" provisions contained in KRS 439.3401.  438 S.W.3d at 330.  The interplay between the subsequent offender and firearm enhancements simply does not present the same interpretative challenge encountered in *Mills*.  Thus, we need not resort to the rule of lenity which is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* a resort to the language and structure, legislative history, and motivating policies of the statute."  *Moskal v. United States*, 498 U.S. 103, 108, (1990) (internal quotations omitted).  McNeal was not subjected to improper double enhancement.

### 7.  Imposition of fine was clear error.

Finally, McNeal argues the trial court erred by imposing a $250 fine upon his misdemeanor conviction for resisting arrest.  He concedes this alleged error was unpreserved but asserts that a sentencing issue may be raised at any time.  Notably, the Commonwealth does not challenge the merits of McNeal's argument on this issue, and instead, contends he is not entitled to relief for lack of preservation.

24

Under our precedents, the improper imposition of fines upon an indigent defendant "is a true 'sentencing issue' which cannot be waived by failure to object." *Roberts v. Commonwealth*, 410 S.W.3d 606, 611 (Ky. 2010). KRS 534.040(4) specifically provides that fines for misdemeanors "shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." This exemption only applies to fines for misdemeanor offenses which are set forth in the Penal Code: it does not apply to fines provided for by other law. *Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018).

Here, McNeal was convicted of three misdemeanor offenses: DUI; no/expired registration plates; and resisting arrest. Recognizing the fines for DUI and no/expired registration plates originated outside the Penal Code, he concedes these fines were properly imposed. However, the $250 fine for resisting arrest is plainly subject to the exception contained in KRS 534.040(4).[9]

We may assume McNeal was found to be indigent because he was appointed counsel at trial and permitted to proceed *in forma pauperis* on appeal. *Roberts*, 410 S.W.3d at 611. Therefore, the erroneous imposition of a fine for resisting arrest was likely a mere oversight which must be vacated despite the lack of preservation. *Id.*

---

[9] The offense of resisting arrest is set forth in KRS 520.090.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the McCracken Circuit Court with respect to McNeal's convictions, sentence of imprisonment, and fines for DUI and no/expired registration plates.  However, we must vacate the $250 fine for resisting arrest and remand to the trial court for entry of a new judgment consistent with this opinion.

All sitting.  Lambert, C.J.; Bisig, Conley, Goodwine, Keller, Nickell, JJ., concur.  Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General